```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
```

```
INDEPENDENCE FEDERAL SAVINGS BANK  )
1229 Connecticut Avenue, N.W.      )
Washington, DC 20036,              )
                                   )
     Plaintiff,                    )   C.A. No. 07-1389
                                   )   Honorable John D. Bates
     v.                            )
                                   )
1225 Connecticut Co. LLC           )
c/o its registered office          )
Corporation Service Company        )
2711 Centerville Road              )
Suite 400                          )
Wilmington, DE 19808               )
                                   )
     Please Serve:                 )
                                   )
     1225 Connecticut Co. LLC      )
     c/o Its Attorney              )
     Richard W. Luchs              )
     Greenstein DeLorme & Luchs, PC)
     1620 L Street, N.W.           )
     Suite 900                     )
     Washington, DC  20036-5605    )
                                   )
     Defendant.                    )
_____)
```

## FIRST AMENDED COMPLAINT

Plaintiff, Independence Federal Savings Bank, by and through its undersigned counsel, hereby amends its Complaint to substitute 1225 Connecticut Co. LLC as the Defendant in place of BRE/Connecticut L.L.C. and states as follows:

## JURISDICTION

1. This Court has diversity jurisdiction pursuant to 28 U.S.C. Section 1332 in that the Plaintiff and Defendant have

diverse citizenship and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000).

2. Venue in this district is proper under 28 U.S.C. §1391(a).

**PARTIES**

3. Plaintiff Independence Federal Savings Bank ("IFSB" or the "Bank") is a federally-chartered savings bank, with its principal place of business in the District of Columbia. It is the oldest historically minority banking institution in the District of Columbia. The Bank operates two branches in the District of Columbia, one branch in Chevy Chase, Maryland, and one branch in Silver Spring, Maryland. The address of the Bank's headquarters is 1229 Connecticut Avenue, N.W., Washington, D.C. (the "Premises"), which is located in the building whose address is 1225 Connecticut Avenue, N.W., Washington, D.C. (the "1225 Building"). On November 4, 2003, the Office of Thrift Supervision (the "OTS") advised the Bank that it had determined that the Bank is both a "problem association" and in "troubled condition." This designation has not been lifted. IFSB has historically served the minority community, and is working diligently under new management to emerge from the OTS designation as a "troubled" institution.

4.   Defendant 1225 Connecticut Co. LLC (formerly known as Trizechan 1225 Connecticut Avenue LLC) ("1225 LLC") is a Delaware limited liability company.

## FACTUAL BACKGROUND

### *The Lease*

5.   On or about December 16, 1988, IFSB, as tenant, and Pool 1225 Associates ("Pool"), as landlord, entered into an Agreement of Lease ("Lease") for the Premises.  A copy of the Lease is attached hereto as Exhibit A.   Section 2.01 of the Lease provided for an initial lease term of twelve years, beginning January 1, 1989 and ending December 31, 2000.

6. Section 1.01 of the Lease describes the leased premises as "the portion of the Lobby Space (containing approximately 6,450 square feet in total) as delineated on the plan attached [hereto] (the "demised premises"), **and as presently constructed** . . .."  (Emphasis added).

7.   Section 1.01 of the Lease further provides that "[t]he lease of the demised premises includes the right, together with other tenants of the Building and members of the public, to use the common and public areas of the Land and Building providing access to the demised premises, but includes no other rights not specifically set forth herein."

8.   On or about December 16, 1988, IFSB and Pool entered into a Memorandum of Lease ("MOL") which provides, in pertinent

part, that Pool leases to IFSB "the portion of Lobby Space (containing approximately 6,450 square feet in total) as described in the said lease ***and as presently constructed*** . . .." (Emphasis added).

    9. Section 16.02 of the Lease provides as follows:

> Landlord reserves the right, without the same constituting an actual or constructive eviction and without incurring liability to Tenant therefore, to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairways, toilets and other public parts of the Building; provided, however that the demised premises shall be visible from the street, public access on the street level directly into the demised premises shall not be cut off, access to the Building shall not be cut off and that there shall be no unreasonable obstruction of access to the demised premises or unreasonable interference with the use or enjoyment thereof.

    10.  Section 20.01 of the Lease is the "Quiet Enjoyment" Article pursuant to which Defendant agrees and covenants that IFSB's "rights under th[e] Lease shall not be cut off or ended before the expiration of the Term of th[e] Lease[.]"

    11.  BRE/Connecticut L.L.C. ("BRE") (a Delaware limited liability company) became the successor in interest to Pool under the Lease.  On or about April 25, 2001, IFSB and BRE entered into a First Amendment to Lease ("Lease Amendment") which pursuant to its express terms was effective as of January 1, 2001.  A copy of the Lease Amendment is attached hereto as Exhibit B.  On

information and belief, BRE subsequently assigned its rights and obligations under the Lease and Lease Amendment to Trizechahn 1225 Connecticut Avenue LLC which is now known as 1225 Connecticut Co. LLC, the Defendant.

12. Section 2 of the Lease Amendment amends the square footage total of the Premises to reflect that the total square footage is 6,870 square feet and not 6,450 square feet.

13. Section 3 of the Lease Amendment amended Section 2.01 of the Lease resulting in a new lease term, for ten years, beginning January 1, 2001 and ending December 31, 2010.

14. Section 42.01 of the Lease provides: "Landlord shall use reasonable efforts to cause the parking garage operator to provide to Tenant, at the prevailing market rate, two (2) parking spaces in the parking garage located beneath the Building [in which the demised premises are located.]"  Section 11 of the Lease Amendment deleted the foregoing Section 42.01, replacing it with language providing, in pertinent part, that "[t]hroughout the Term, Landlord agrees to provide to Tenant, at Landlord's expense, two (2) parking spaces . . . in the below grade par[k]ing structure on the Land . . .."

15. Section 14 of the Lease Amendment provides that "[e]xcept as expressly set forth in this Amendment, the terms and conditions of the Lease shall continue in full force and effect

without any change or modification and shall apply for the balance of the term of the Lease."

16.   There have been no other amendments to the Lease.

### *The Repositioning Project*

17. In or about April 2007, Robert Isard, the Vice Chairman of IFSB, met with Christine V. Olfus-Campos regarding the renovation project, but no detailed information about the project was given to IFSB at that meeting. On or about May 11, 2007, Brookfield Properties (the property manager for the 1225 Building) delivered a letter to IFSB.  A copy of the May 11, 2007 letter is attached hereto as Exhibit C.  The letter states that on July 1, 2007, work would commence for the 1225 Connecticut Avenue Repositioning Project ("Repositioning Project").  The letter further advised that the project is currently scheduled to continue for approximately 18 months. IFSB does not know when Defendant decided to renovate the 1225 Building..

18. On or about June 12, 2007, representatives of IFSB, including Morton Bender and Mr. Isard, met with representatives of Brookfield Properties regarding the proposed Repositioning Project. They also met with the architect and contractor.  IFSB expressed its concern at that meeting about the substantial business disruptions and safety hazards that the Repositioning Project would cause. On July 2, 2007, Mr. Bender met with Paul Schulman of Brookfield Properties in an attempt to resolve the

concerns that IFSB had about the Repositioning Project. No resolution was reached.

19. On or about July 20, 2007, Brookfield Properties, delivered a Memo to the tenants of the 1225 Building, including IFSB, setting forth a tentative schedule for the Repositioning Project. A copy of the July 20, 2007 Memo is attached hereto as Exhibit D. Other than IFSB and a branch of CitiBank located at the corner opposite from the Premises, IFSB does not know of any other tenants still remaining in the 1225 Building.

20. According to the July 20, 2007 Memo, "Initial Construction Set-Up" will take place from July 23 through August 3, 2007. The Initial Construction Set-Up will include: adding partitions in the lobby area to separate construction crews, offices and entrances from the rest of the main lobby and the tenants' areas (to occur July 23 through July 27, 2007); the demolition and removal of the sidewalk tree planters (to occur July 28, 2007); the placement of a crane on the N Street side of the building to install trash chutes for interior demolition (to occur July 28, 2007); the blocking off of the metered parking and one lane of traffic on N Street to allow for the construction staging area (to occur July 30 through August 3, 2007); the placement of scaffolding in the form of a covered walkway on 18th Street in front of the retail spaces (to occur August 4, 2007); and the installation of temporary signage for the retail spaces

(to occur August 4, 2007). The July 20, 2007 Memo also provides that the interior demolition will occur August 2007 through April 2008 and the exterior demolition April 2008 through June 2008.

21. Attached hereto as Exhibit E is the site layout plan illustrating the foregoing construction.

22. On July 25, 2007, Brookfield Properties sent a letter to IFSB regarding "Asbestos Containing Materials Abatement Notice," a copy of which is attached hereto as Exhibit F. Pursuant to this Notice, IFSB has been informed that "abatement of certain Asbestos Containing Materials will be taking place within the building soon[.]" The letter further states that the abatement work will begin within thirty days of July 25, 2007 (i.e., by August 24, 2007). Upon information and belief, other than a branch of CitiBank, all other tenants have moved from the building.

23. Beginning on or about July 9, 2007, the air conditioning at the Premises is being turned off at 6:00 p.m. even though not all Bank employees have left by that time and are still working. Although interior demolition was not to begin until August 2007, and asbestos abatement work is not to begin until August 24, 2007, it appears that interior demolition has already begun. There are garbage dumpsters outside of the 1225 Building which have already been filled with debris, including dry wall. A copy of pictures of the dumpsters taken by Mr. Isard

on the afternoon of July 30, 2007 is attached hereto as Exhibit G. According to Mr. Isard, the dumpsters do not appear to contain any identification plate, telephone number or permit.

**COUNT I**

**(BREACH OF CONTRACT)**

24. Plaintiff incorporates herein by reference paragraphs 1-23 as if fully set forth herein.

25. The Lease and the Lease Amendment constitute a valid contract between Plaintiff and Defendant.

26. Plaintiff has fully and adequately performed its obligations under the Lease and the Lease Amendment.

27. Defendant's Repositioning Project constitutes a material breach of the Lease and the Lease Amendment. The specific provisions of the Lease and the Lease Amendment which are breached by the Repositioning Project include but may not be limited to, the following:

> (A) Section 1.01 is breached in that as a result of the Repositioning Project the Premises will no longer exist as they were constructed at the time the Lease was entered into; and IFSB and its customers will no longer have the right to use all the common and public areas of the Land and Building (as those terms are defined in the Lease) providing access to the demised premises;
>
> (B) Section 16.02 is breached in that the Repositioning Project does not comport with the limited rights of 1225 LLC as Landlord to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairways, toilets and other public parts of the 1225 Building. Section 16.02 is further breached in that during the Repositioning

>Project, the Premises will no longer be visible from the street; public access on the street level directly into the Premises will be cut off; access to the 1225 Building will be cut off; there will be unreasonable obstruction of access to the Premises; and there will be unreasonable interference with the use or enjoyment of the Premises;
>
>(C) Section 21.02 is breached in that 1225 LLC is failing to furnish air conditioning after 6:00 pm.
>
>(D) Section 11 of the Lease Amendment is breached in that the Repositioning Project will result in the loss of the two parking garage spaces to which IFSB is entitled;
>
>(E) Section 20.01 of the Lease is breached in that the Repositioning Project will terminate IFSB's quiet enjoyment of the Premises.
>
>(F) IFSB is not a bank with hundreds of conveniently located branches. It is a small bank with only 4 branches, including its headquarters location in the 1225 Building.  If customers, both new and current, are unable to easily access the Bank (or fear for their physical safety if they do access the bank), the Bank risks losing those customers to nearby more easily accessible banks.  Indeed, a branch of Wachovia Bank is located across the street.

28. As a result of the foregoing breaches, IFSB will suffer irreparable harm from a loss of business due to restricted access to, and visibility of, the Bank.  The loss of business will be so severe as to constitute a destruction of the Bank's business.

29.  In addition to the foregoing losses, IFSB's employees and customers will suffer harm and injury as a result of the asbestos abatement.

30.  Plaintiff has no adequate remedy at law.

## COUNT II

### (VIOLATION OF IMPLIED COVENANT OF QUIET ENJOYMENT)

31.  Plaintiff incorporates herein by reference paragraphs 1-30 as if fully set forth herein.

32.  There is a covenant of quiet enjoyment implied in the Lease and Lease Amendment and inuring to the benefit of Plaintiff in its capacity as a tenant.

33.  In undertaking the Repositioning Project, 1225 LLC is interfering with the Bank's implied covenant of quiet enjoyment in that the Project is actually disturbing Plaintiff's possession and use of the Premises.

34.  As a result of 1225 LLC's interference, the Bank is suffering and will continue to suffer harm.

### REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter an appropriate order granting equitable and monetary relief, and specifically, that the Court:

(A)  grant preliminary and permanent injunctive relief enjoining Defendant 1225 LLC from undertaking its Repositioning Project until after December 31, 2010, the end of the current term of the Lease;

(B) grant preliminary and permanent injunctive relief enjoining Defendant 1225 LLC from commencing asbestos abatement

until after December 31, 2010, the end of the current term of the Lease.

(C) enter judgment in favor of Plaintiff and against Defendant for compensatory damages, plus pre-judgment interest;

(D)  award Plaintiff its attorneys' fees and costs of this action; and

(E)  grant such other and further relief as may be appropriate.

Respectfully submitted,

COOTER, MANGOLD, TOMPERT
 & KARAS, L.L.P.

_____/s/_____
Dale A. Cooter, Bar No.227454
Donna S. Mangold, Bar No. 358851
5301 Wisconsin Ave., N.W.
Suite 500
Washington, D.C. 20015
(202)537-0700
efiling@cootermangold.com
*Attorneys for Plaintiff*
*Independence Federal Savings Bank*