UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
INDEPENDENCE FEDERAL SAVINGS BANK   )
1229 Connecticut Avenue, N.W.       )
Washington, DC 20036,               )
                                    )
     Plaintiff,                     )   C.A. No. 07-1389
                                    )   Honorable John D. Bates
     v.                             )
                                    )
1225 Connecticut Co. LLC            )
c/o its registered office           )
Corporation Service Company         )
2711 Centerville Road               )
Suite 400                           )
Wilmington, DE 19808                )
_____)
```

**PLAINTIFF'S AMENDED APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF**

Pursuant to Local Rules 65.1(c) of the Rules of Civil Procedure for the United States District Court for the District of Columbia, Plaintiff, Independence Federal Savings Bank, by and through its undersigned counsel, filed its Application for Prelimininary Injunctive Relief on July 31, 2007 BRE/Connecticut, L.L.C. ("BRE""). On August 9, 2007, Plaintiff learned that BRE had assigned its rights and obligations under the lease that is at issue to Trizechahn 1225 Connecticut Avenue, LLC, which is now known as 1225 Connecticut Co. LLC.  Therefore, IFSB files this amended Application for Preliminary Injunctive Relief to seek relief against 1225 Connecticut Co. LLC, pursuant to the terms of the proposed Order submitted herewith, and for such other and further relief as may be appropriate. In support hereof,

1

Plaintiff respectfully refers to and incorporates herein its original Verified Complaint, its First Amended Complaint, its Memorandum (and Exhibits thereto) in support of its original Application for Preliminary Injunctive Relief, and its Supplemental Memorandum filed concurrently herewith.

Respectfully submitted,

COOTER, MANGOLD, TOMPERT
 & KARAS, L.L.P.


          /s/
Dale A. Cooter, Bar #227454
Donna S. Mangold, Bar #358851
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, D.C.  20015
(202) 537-0700
efiling@cootermangold.com
*Attorneys for Plaintiff*
 *Independence Federal Savings Bank*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INDEPENDENCE FEDERAL SAVINGS BANK )<br>1229 Connecticut Avenue, N.W. )<br>Washington, DC 20036, )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>1225 Connecticut Co. LLC )<br>c/o its registered office )<br>Corporation Service Company )<br>2711 Centerville Road )<br>Suite 400 )<br>Wilmington, DE 19808 )<br>_____ ) | C.A. No. 07-1389<br>Honorable John D. Bates |

**SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF**

Plaintiff, Independence Federal Savings Bank ("IFSB"), by and through its undersigned counsel, submits this Supplemental Memorandum of Points and Authorities in support of its Amended Application for Preliminary Injunctive Relief and states as follows:

On July 31, 2007, Plaintiff Independence Federal Savings Bank ("IFSB" or the "Bank") filed and served a Verified Complaint and Application for Preliminary Injunctive Relief against BRE/Connecticut L.L.C. ("BRE"), as well as a supporting Memorandum of Points and Authorities and exhibits, including the Declaration of John Hall, the President and Chief Executive Officer of IFSB (together, the "July 31st Filings").  IFSB is a tenant at 1229 Connecticut Avenue, NW, Washington, DC and this action involves a renovation project underway at the building in

which IFSB offices are located.  On August 9, 2007, undersigned counsel learned that BRE has assigned its rights and obligations as landlord under the lease with IFSB to Trizechahn 1225 Connecticut Avenue LLC, which is now known as 1225 Connecticut Co. LLC ("1225 LLC").  Concurrently herewith, IFSB is filing a First Amended Complaint to substitute 1225 LLC in place of BRE as the Defendant, to aver that 1225 LLC is BRE's assignee under the Lease, and to modify the allegations to reflect that substitution.  IFSB is also filing an Amended Application for Preliminary Injunctive Relief to reflect the same changes.  IFSB hereby incorporates by reference its July 31st Filings to support its Amended Application for Preliminary Injunctive Relief.  IFSB now seeks its relief against Defendant 1225 LLC instead of against BRE.

                                    Respectfully submitted,

                                    COOTER, MANGOLD, TOMPERT
                                     & KARAS, L.L.P.


                                    _____/s/_____
                                    Dale A. Cooter, Bar #227454
                                    Donna S. Mangold, Bar #358851
                                    5301 Wisconsin Avenue, N.W.
                                    Suite 500
                                    Washington, D.C.  20015
                                    (202)537-0700
                                    efiling@cootermangold.com
                                    *Attorneys for Plaintiff*
                                    *Independence Federal Savings Bank*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th ay of August 2007, a copy of the foregoing Plaintiff's Amended Application for Preliminary Injunctive Relief, Supplemental Memorandum of Points and Authorities in support thereof, and Proposed Amended Order was sent by e-mail to:

>Richard W. Luchs
>Greenstein DeLorme & Luchs, PC
>1620 L Street, N.W.
>Suite 900
>Washington, DC  20036-5605
>
>*Counsel for Defendant*

>_____/s/_____
>Donna S. Mangold

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **INDEPENDENCE FEDERAL SAVINGS BANK** )<br>1229 Connecticut Avenue, N.W. )<br>Washington, DC 20036, )<br>    )<br>    Plaintiff, )<br>    )<br>    v. )<br>    )<br>**1225 Connecticut Co. LLC** )<br>c/o its registered office )<br>Corporation Service Company )<br>2711 Centerville Road )<br>Suite 400 )<br>Wilmington, DE 19808 )<br>_____ ) | C.A. No. 07-1389<br>Honorable John D. Bates |

**[PROPOSED] AMENDED ORDER GRANTING PRELIMINARY INJUNCTION**

UPON CONSIDERATION of the Plaintiff's Application (and Amended Application) for Preliminary Injunctive Relief, the Memorandum of Points and Authorities (and Supplemental Memorandum) in Support thereof, any opposition thereto and hearing thereon, the Court makes the following Findings of Fact and Conclusions of Law this \_\_\_\_ day of _____, 2007:

**<u>Findings of Fact</u>**

1. Plaintiff Independence Federal Savings Bank ("IFSB" or the "Bank") is a federally-chartered savings bank, with its principal place of business in the District of Columbia. It is the oldest historically minority banking institution in the District of Columbia. The Bank operates two branches in the District of Columbia, one branch in Chevy Chase, Maryland, and

one branch in Silver Spring, Maryland.  The address of the Bank's headquarters is 1229 Connecticut Avenue, N.W., Washington, D.C. (the "Premises"), which is located in the building whose address is 1225 Connecticut Avenue, N.W., Washington, D.C.(the "1225 Building").  On November 4, 2003, the Office of Thrift Supervision (the "OTS") advised the Bank that it had determined that the Bank is both a "problem association" and in "troubled condition."  This designation has not been lifted.

2.   Defendant 1225 Connecticut Co. LLC ("1225 LLC") is a Delaware limited liability company.  1225 LLC was formerly known as Trizechahn 1225 Connecticut Avenue LLC which was the assignee of BRE/Connecticut L.L.C. ("BRE").  BRE was the successor in interest to Pool 1225 Associates ("Pool").

3.   On or about December 16, 1988, IFSB, as tenant, and Pool, as landlord, entered into an Agreement of Lease ("Lease") for the Premises.  Section 2.01 of the Lease provided for an initial lease term of twelve years, beginning January 1, 1989 and ending December 31, 2000.

4.   Section 1.01 of the Lease describes the leased premises as "the portion of the Lobby Space (containing approximately 6,450 square feet in total) as delineated on the plan attached hereto as Exhibit A (the "demised premises"), **and as presently constructed** . . .."  (Emphasis added).

5. Section 1.01 of the Lease further provides that "[t]he lease of the demised premises includes the right, together with other tenants of the Building and members of the public, to use the common and public areas of the Land and Building providing access to the demised premises, but includes no other rights not specifically set forth herein."

6. On or about December 16, 1988, IFSB and Pool entered into a Memorandum of Lease ("MOL") which provides, in pertinent part, that Pool leases to IFSB "the portion of Lobby Space (containing approximately 6,450 square feet in total) as described in the said lease ***and as presently constructed*** . . . ." (Emphasis added).

7. Section 16.02 of the Lease provides as follows:

> Landlord reserves the right, without the same constituting an actual or constructive eviction and without incurring liability to Tenant therefore, to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairways, toilets and other public parts of the Building; provided, however that the demised premises shall be visible from the street, public access on the street level directly into the demised premises shall not be cut off, access to the Building shall not be cut off and that there shall be no unreasonable obstruction of access to the demised premises or unreasonable interference with the use or enjoyment thereof.

8. Section 20.01 of the Lease is the "Quiet Enjoyment" Article pursuant to which the Defendant 1225 LLC as landlord

agrees and covenants that IFSB's "rights under th[e] Lease shall not be cut off or ended before the expiration of the Term of th[e] Lease[.]"

    9.   On or about April 25, 2001, IFSB and BRE entered into a First Amendment to Lease ("Lease Amendment") which pursuant to its express terms was effective as of January 1, 2001. Thereafter, BRE assigned its rights and obligations under the Lease and Lease Amendment to Trizechahn 1225 Connecticut Avenue LLC, which is now known as 1225 Connecticut Co. LLC, the Defendant.

    10.   Section 2 of the Lease Amendment amends the square footage total of the Premises to reflect the total square footage is 6,870 square feet and not 6,450 square feet.

    11. Section 3 of the Lease Amendment amended Section 2.01 of the Lease resulting in a new lease term, for ten years, beginning January 1, 2001 and ending December 31, 2010.

    12.   Section 42.01 of the Lease provides: "Landlord shall use reasonable efforts to cause the parking garage operator to provide to Tenant, at the prevailing market rate, two (2) parking spaces in the parking garage located beneath the Building [in which the demised premises are located.]"  Section 11 of the Lease Amendment deleted the foregoing Section 42.01, replacing it with language providing, in pertinent part, that "[t]hroughout the Term, Landlord agrees to provide to Tenant, at Landlord's

expense, two (2) parking spaces . . . in the below grade par[k]ing structure on the Land . . .."

13. Section 14 of the Lease Amendment provides that "[e]xcept as expressly set forth in this Amendment, the terms and conditions of the Lease shall continue in full force and effect without any change or modification and shall apply for the balance of the term of the Lease."

14. There have been no other amendments to the Lease.

15. In or about April 2007, Robert Isard, the Vice Chairman of IFSB, met with Christine V. Olfus-Campos regarding a renovation project for the 1225 Building, but no detailed information about the project was given to IFSB at that meeting. On or about May 11, 2007, Brookfield Properties (the property manager for the 1225 Building) delivered a letter to IFSB. The letter states that on July 1, 2007, work would commence for the 1225 Connecticut Avenue Repositioning Project ("Repositioning Project"). The letter further advised that the project is currently scheduled to continue for approximately 18 months.

16. On or about June 12, 2007, representatives of IFSB, including Morton Bender and Mr. Isard, met with representatives of Brookfield Properties regarding the proposed Repositioning Project. They also met with the architect and contractor. IFSB expressed its concern at that meeting about the substantial business disruptions and safety hazards that the Repositioning

5

Project would cause. On July 2, 2007, Mr. Bender met with Paul Schulman of Brookfield Properties in an attempt to resolve the concerns that IFSB had about the Repositioning Project.  No resolution was reached.

    17.  On or about July 20, 2007, Brookfield Properties, delivered a Memo to the tenants of the 1225 Building, including IFSB, setting forth a tentative schedule for the renovation of the Repositioning Project.  Other than IFSB and a branch of CitiBank located at the corner opposite of the Premises, there are no other tenants remaining in the 1225 Building.

    18.  According to the July 20, 2007 Memo, "Initial Construction Set-Up" will take place from July 23 through August 3, 2007.  The Initial Construction Set-Up will include: adding partitions in the lobby area to separate construction crews, offices and entrances from the rest of the main lobby and the tenants' areas (to occur July 23 through July 27, 2007); the demolition and removal of the sidewalk tree planters (to occur July 28, 2007); the placement of a crane on the N Street side of the building to install trash chutes for interior demolition (to occur July 28, 2007); the blocking off of the metered parking and one lane of traffic on N Street to allow for the construction staging area (to occur July 30 through August 3, 2007); the placement of scaffolding in the form of a covered walkway on 18th Street in front of the retail spaces (to occur August 4, 2007);

and the installation of temporary signage for the retail spaces (to occur August 4, 2007).  The July 20, 2007 Memo also provides that the interior demolition will occur August 2007 through April 2008 and the exterior demolition April 2008 through June 2008.

19.   On July 25, 2007, Brookfield Properties sent a letter to IFSB regarding "Asbestos Containing Materials Abatement Notice."   Pursuant to this Notice, IFSB has been informed that "abatement of certain Asbestos Containing Materials will be taking place within the building soon[.]" The letter further states that the abatement work will begin within thirty days of July 25, 2007 (i.e., by August 24, 2007).  CitiBank and IFSB are the only remaining tenants at the 1225 Building.

20.   Beginning on or about July 9, 2007, the air conditioning at the Premises is being turned off at 6:00 p.m. even though not all Bank employees have left by that time and are still working. Although interior demolition was not to begin until August 2007, and asbestos abatement work is not to begin until August 24, 2007, interior demolition began in July. Garbage dumpsters were placed outside of the 1225 Building and were already filled with debris, including dry wall, prior to August 2007.  The dumpsters do not appear to contain any identification plate, telephone number or permit.

21.   IFSB is not a bank with hundreds of conveniently located branches. It is a small bank with only 4 branches,

including its headquarters location in the 1225 Building.  If customers, both new and current, are unable to easily access the Bank (or fear for their physical safety if they do access the bank), the Bank risks losing those customers to nearby more easily accessible banks.  A branch of Wachovia Bank is located across the street.

## CONCLUSIONS OF LAW

22.  The Lease and the Lease Amendment constitute a valid contract between Plaintiff and Defendant.

23. Plaintiff has fully and adequately performed its obligations under the Lease and the Lease Amendment.

24.  Defendant's Repositioning Project constitutes a material breach of the Lease and the Lease Amendment.  The specific provisions of the Lease and the Lease Amendment which are breached by the Repositioning Project include but may not be limited to, the following:

> (A) Section 1.01 is breached in that as a result of the Repositioning Project the Premises will no longer exist as they were constructed at the time the Lease was entered into; and IFSB and its customers will no longer have the right to use all the common and public areas of the Land and Building providing access to the demised premises;
>
> (B) Section 16.02 is breached in that the Repositioning Project does not comport with the limited rights of 1225 LLC as Landlord to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairways, toilets and other public parts of the Building.  Section 16.02 is further breached in that during the Repositioning

>Project, the Premises will no longer be visible from the street; public access on the street level directly into the Premises will be cut off; access to the Building will be cut off; there will be unreasonable obstruction of access to the Premises; and there will be unreasonable interference with the use or enjoyment of the Premises;
>
>(C) Section 21.02 is breached in that 1225 LLC is failing to furnish air conditioning after 6:00 pm.
>
>(D) Section 11 of the Lease Amendment is breached in that the Repositioning Project will result in the loss of the two parking garage spaces to which IFSB is entitled;
>
>(E) Section 20.01 of the Lease is breached in that the Repositioning Project will terminate IFSB's quiet enjoyment of the Premises.

25. As a result of the foregoing breaches, IFSB will suffer irreparable harm from a loss of business due to restricted access to, and visibility of, the Bank. The loss of business will be so severe as to constitute a destruction of the Bank's business.

26. In addition to the foregoing losses, IFSB's employees and customers will suffer harm and injury as a result of the asbestos abatement.

27. Plaintiff has no adequate remedy at law.

28. There is a covenant of quiet enjoyment implied in the Lease and Lease Amendment and inuring to the benefit of Plaintiff in its capacity as a tenant.

29. In undertaking the Repositioning Project, 1225 LLC is interfering with the Bank's implied covenant of quiet enjoyment

in that the Project is actually disturbing Plaintiff's possession and use of the Premises.

30. As a result of BRE's interference, the Bank is suffering and will continue to suffer harm.

**IT IS HEREBY ORDERED,**

(A) that Defendant 1225 LLC, be, and it hereby is, enjoined from undertaking its Repositioning Project until after December 31, 2010, the end of the current term of the Lease;

(B) Defendant 1225 LLC be, and it hereby is, from commencing asbestos abatement until after December 31, 2010, the end of the current term of the Lease;

(C) Plaintiff is awarded its attorneys' fees and costs of this action.

 

 

_____
John D. Bates
United States District Judge